MCM:FTB
F. #2018R02075

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | C O M P L A I N T |
| - against - | (18 U.S.C. § 1952(a)(3); 21 U.S.C. § 846) |
| SIMON GORDON,, <br> also known as "Shelly," "Shorty" <br> and "Teddy," | 19-MJ-121 |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      GEORGE DIETZ, being duly sworn, deposes and states that he is a Special Agent with the United States Attorney's Office for the Eastern District of New York, duly appointed according to law and acting as such.

      Upon information and belief, in or about and between June 2018 and July 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," together with others, did knowingly and willfully use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of one or more unlawful activities, to wit: Bribe Receiving in the Third Degree, in violation of New York Penal Law Section 200.10, and thereafter to perform acts to promote, manage, establish,

carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3).

(Title 18, United States Code, Section 1952(a)(3))

Upon information and belief, in or about July 2018, within the Eastern District of New York and elsewhere, the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," together with others, did knowingly, intentionally and unlawfully conspire to possess with intent to distribute a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 846.

(Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the United States Attorney's Office for the Eastern District of New York (the "USAO") and have been since August 2018. Prior to joining the USAO, I was a Special Agent with the United States Department of Housing and Urban Development, Office of Inspector General for approximately eight-and-a-half years. I have been involved in the investigation of numerous cases involving official corruption. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

I. <u>The Defendant</u>

2. The defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," is a natural born United States citizen, who resides in Bronx, New York, and is twenty-three years old. GORDON received an appointment with the New York City Department of Correction in 2016 and was assigned as a correction officer to Rikers Island.

II. <u>The Gordon Phone Number</u>

3. As part of the investigation, I have reviewed records obtained from T-Mobile US, Inc. pursuant to a subpoena for the telephone number (XXX) XXX-4566. A review of those records showed that the telephone number (XXX) XXX-4566 is subscribed to by the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy" (the "Gordon Phone Number"). In addition, a review of a New York City Department of Correction database shows that the telephone number (XXX) XXX-4566 is associated with GORDON and that GORDON used the Gordon Phone Number to call in sick for work at Rikers Island on at least two occasions. Moreover, as detailed below, GORDON has used the Gordon Phone Number to facilitate the crimes charged on at least two occasions during the course of the investigation.

III. <u>Co-Conspirator 1's Monitored Telephone Calls with Co-Conspirator 2 About Bribing a Correction Officer</u>

4. In August 2017, an individual ("Co-Conspirator 1"), was arrested and subsequently charged in an indictment filed in New York State Supreme Court with 43 counts of Criminal Possession of a Forged Instrument in the First Degree, in violation of N.Y.P.L. § 170.30. Co-Conspirator 1 was on parole for a previous New York State

3

conviction when Co-Conspirator 1 was alleged to have committed the forgery offenses and, as a result, was separately charged with a parole violation for the same conduct and remanded to Rikers Island.

5. Inmates on Rikers Island are permitted to have monitored telephone calls with people outside of the facility. Each inmate is assigned a unique number, hereinafter referred to as a "PIN Number," that is used to track inmates' use of the telephones and to monitor the telephone calls that are placed from the facility. As part of this investigation, investigators with the New York City Department of Investigation ("DOI") monitored in real time the telephone calls placed using Co-Conspirator 1's PIN Number from Rikers Island beginning in early July 2018.

6. Beginning in early July 2018, Co-Conspirator 1 placed multiple calls to the phone number (XXX) XXX-5510 (the "5510 Number"), which, based on their monitoring of the calls, DOI investigators believe is used by a person with whom Co-Conspirator 1 is involved romantically ("Co-Conspirator 2"). Specifically, I am advised that DOI investigators have heard Co-Conspirator 1 and Co-Conspirator 2 discuss their affection for each other and refer to each other using terms of endearment. Records obtained from Rikers Island by DOI investigators also show numerous visits by Co-Conspirator 2 to Co-Conspirator 1 during the time that Co-Conspirator 1 was incarcerated. During the calls, DOI investigators overheard Co-Conspirator 1 and Co-Conspirator 2 discussing in sum and substance Co-Conspirator 2 having made cash payments to a Rikers Island correction officer to smuggle contraband into the facility. From their review of the calls, DOI investigators have determined that Co-Conspirator 1 and Co-Conspirator 2 used the names "Shelly," "Shorty" and "Teddy" to refer to the correction officer.

7.      Based on my training and experience, as well as the investigation thus far, I believe there is probable cause that during these discussions the names "Shelly," "Shorty," and "Teddy" were code for the defendant SIMON GORDON.  For example, as explained in further detail below, based on the investigation, which includes recorded telephone calls, physical surveillance, review of documents, and interviews, there is probable cause to believe Co-Conspirator 2 has met GORDON to bribe him with cash in exchange for GORDON's smuggling contraband into Rikers Island for Co-Conspirator 1.  In addition, I am advised that DOI investigators have reviewed telephone records obtained pursuant to a subpoena for the 5510 Number, which reveal communications between the 5510 Number and the Gordon Phone Number.

8.      On July 29, 2018, DOI investigators monitored a telephone call from Co-Conspirator 1 to the 5510 Number at approximately 1:45 p.m.  During the call, the investigators overheard Co-Conspirator 2 tell Co-Conspirator 1, in sum, substance and in part, that Co-Conspirator 2 was waiting for the bus at the bus stop and was not by the parking lot.  From my knowledge and experience, as well as my participation in the investigation, I believe Co-Conspirator 2 was referring to the bus stop that takes visitors onto Rikers Island, meaning that Co-Conspirator 2 was in the vicinity of the jail.  Co-Conspirator 2 also told Co-Conspirator 1, in sum, substance and in part, that Co-Conspirator 2 had given two "bands" to a person Co-Conspirator 2 referred to as "Shelly" (at one point in the call Co-Conspirator 2 seemed to refer to the same person as "Shorty," but that part of the call was difficult to hear, and Co-Conspirator 2 may have said "Shelly").  Based on my knowledge and experience, as well as my participation in the investigation to date, I believe that during this conversation Co-Conspirator 1 and Co-Conspirator 2 were using coded language when

5

they used the name "Shelly" (or "Shorty") and the phrase "two bands." I further believe, based on my knowledge and experience, as well as my participation in this investigation, that when Co-Conspirator 2 told Co-Conspirator 1 that Co-Conspirator 2 had given "Shelly" (or "Shorty") the "two bands," Co-Conspirator 2 and Co-Conspirator 1 were referring to the defendant SIMON GORDON and were using those names to prevent law enforcement from learning the true identity of the person to whom they were referring. I further believe that the phrase "two bands" was used as coded language refering to "$2,000," which Co-Conspirator 2 had given to GORDON.

9. Later during the same call, Co-Conspirator 1 instructed Co-Conspirator 2, in sum, substance and in part, to tell "Shelly" that Co-Conspirator 2 had "six balls." Based on my knowledge and experience, as well as my participation in the investigation to date, I believe that Co-Conspirator 1 and Co-Conspirator 2 were again using coded language to evade detection by law enforcement and that when Co-Conspirator 1 told Co-Conspirator 2 to tell "Shelly" that Co-Conspirator 2 had "six balls," that Co-Conspirator 1 was instructing Co-Conspirator 2 to tell the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," that Co-Conspirator 2 had six packages of illegal narcotics for GORDON to smuggle into Rikers Island.

IV. Co-Conspirator 2's Delivery of Contraband to GORDON

10. In the afternoon, on July 29, 2018, DOI investigators conducted physical surveillance of Co-Conspirator 2 starting at approximately 3:35 p.m. During the surveillance, DOI investigators observed Co-Conspirator 2 walking in the vicinity of Co-Conspirator 2's residence located in Freeport, New York. DOI investigators observed Co-Conspirator 2 carrying a bag, which Co-Conspirator 2 placed into the trunk of a vehicle

6

before driving away. DOI investigators were subsequently unable to surveil Co-Conspirator 2 for a period of approximately three (3) hours before observing Co-Conspirator 2 in the same vehicle in the parking lot of a Home Depot store located in Queens, New York at approximately 6:26 p.m. The investigators observed Co-Conspirator 2 remain inside the vehicle in the parking lot for approximately one hour, during which time Co-Conspirator 2 changed parking spots multiple times.

11. At approximately 7:30 p.m., DOI investigators observed Co-Conspirator 2 drive the vehicle from the Home Depot parking lot to a parking spot in front of a fire hydrant located at 49th Street between 43rd Avenue and Skillman Avenue in Queens, New York. DOI investigators drove past the vehicle, but did not initially observe Co-Conspirator 2 inside it. They later drove past the vehicle again shortly thereafter and did see Co-Conspirator 2 inside the vehicle. Co-Conspirator 2 remained in the vehicle for approximately two hours. While Co-Conspirator 2 was in the vehicle, Co-Conspirator 1 placed multiple recorded telephone call from Rikers to the 5510 Number. DOI Investigators monitored these telephone calls in real time, during which they overheard Co-Conspirator 2 tell Co-Conspirator 1, in sum, substance and in part, that Co-Conspirator 2 had gone to a 99¢ Store to get nail polish. Co-Conspirator 2 later told Co-Conspirator 1 that Co-Conspirator 2 was about to "coat it and everything one more time." Co-Conspirator 2 also told Co-Conspirator 1, in sum, substance and in part, that Co-Conspirator 2 had spoken with "Shelly" and that "Shelly" was not able to meet until later that night. Based on my knowledge and experience, as well as my participation in the investigation to date, I know that nail polish is frequently applied by narcotics traffickers to packages containing illegal drugs to mask the odor of the drugs, rendering packages more difficult to detect. Moreover, based on my

knowledge and experience, as well as my participation in the investigation to date, it is my belief that when Co-Conspirator 2 was telling Co-Conspirator 1 that Co-Conspirator 2 was going to "coat it and everything one more time," Co-Conspirator 2 was referring to using nail polish to mask the smell of the drugs Co-Conspirator 2 intended to provide to Gordon ("Shelly") when Co-Conspirator 2 met Gordon later that night.  At approximately 9:45 p.m., DOI investigators observed Co-Conspirator No. 2 drive the vehicle onto the Grand Central Parkway going eastbound, at which point DOI investigators were unable to continue surveillance of the vehicle.

12. During the morning of July 30, 2018, DOI investigators monitored a telephone call made by Co-Conspirator 1 from Rikers Island to the 5510 Number. During the course of the call, DOI investigators overheard Co-Conspirator 2 tell Co-Conspirator 1, in sum, substance and in part, that Co-Conspirator 2 had met "Shelly" last night and delivered something to "her." Based on my knowledge and experience, as well as my participation in the investigation to date, I believe that when Co-Conspirator 2 said that Co-Conspirator 2 had met "Shelly" and delivered something to "her," Co-Conspirator 2 was using coded language to inform Co-Conspirator 1 of the fact that Co-Conspirator 2 had met the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," and had delivered a package containing drugs to him.

V. <u>Toll Records Analysis of the Gordon Phone Number</u>

13. An analysis of toll records for the 5510 Number conducted by DOI investigators reveals that on July 29, 2018, at approximately 10:20 p.m. the 5510 Number received a call from the Gordon Phone Number. In addition, the toll records indicate text message communications between the 5510 Number and the Gordon Phone Number at

8

approximately 11:37 p.m. on July 29, 2018, and approximately 12:27 a.m. on July 30, 2018. In total, between approximately 12:39 p.m. on July 29, 2018 and 12:31 a.m. on July 30, 2018, toll records reveal 32 communications, via telephone calls and text messages, between the 5510 Number and the Gordon Phone Number. These communications occurred on the same day – July 29, 2018 – on which Co-Conspirator 2 told Co-Conspirator 1 that Co-Conspirator 2 had met "Shelly" and delivered something to "her." Based on the investigation, as well as my experience and training, there is probable cause to believe that the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," was speaking on the telephone to Co-Conspirator 2 to coordinate delivery of the contraband and money used to bribe GORDON.

VI.   Voluntary Interview of Gordon

14.   In the afternoon of July 30, 2018, the day after Co-Conspirator 2 delivered a package to "Shelly," DOI investigators intercepted the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," as he was reporting for work on Rikers Island. GORDON was subjected to a narcotics canine sniff search, which yielded negative results. GORDON was advised that he was not being taken into custody and was free to leave at any time. GORDON voluntarily agreed to speak with DOI investigators and admitted that he had concealed a package in the crotch of his pants. He further voluntarily handed over a package wrapped in plastic cling wrap. When DOI investigators unraveled the cling wrap, they found that the package consisted of multiple pellets containing marijuana, a Schedule I controlled substance. Collectively, the pellets had a gross weight of approximately 99.8 grams. The investigators also noted that the package had been coated with clear nail polish. During the interview, GORDON also advised DOI that the telephone

number assigned to his cellular telephone is (XXX) XXX-4566, which is identical to the Gordon Phone Number.

WHEREFORE, your deponent respectfully requests that the defendant SIMON GORDON, also known as "Shelly," "Shorty" and "Teddy," be dealt with according to law.

*George Dietz*
GEORGE DIETZ
Special Agent
United States Attorney's Office
Eastern District of New York

Sworn to before me this
7th day of February, 2019

*Robert Levy*
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK